# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3927

_____

Steven Goldsmith, on behalf of himself and all others similarly situated

*Plaintiff - Appellant*

v.

Lee Enterprises, Inc., et al.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 22, 2022
Filed: January 11, 2023

_____

Before LOKEN, BENTON, and KOBES, Circuit Judges.

_____

LOKEN, Circuit Judge.

Steven Goldsmith, a home-delivery subscriber to the *St. Louis Post-Dispatch* daily newspaper (the "*Post-Dispatch*"), filed this putative class action for damages against the owner and publisher of the *Post-Dispatch*[1] in state court on May 14, 2019.

_____

[1]Lee Enterprises, Inc., Lee Enterprises Missouri, Inc., St. Louis Post-Dispatch LLC, and Pulitzer, Inc. (collectively, "Defendants").

Goldsmith alleges that Defendants "double-billed" him for "overlapping days" in consecutive subscription invoices. Defendants timely removed the case to federal court in June 2019 under the Class Action Fairness Act, alleging that Goldsmith is seeking aggregate class-wide damages for the applicable five-year statute of limitations period that exceed $5,000,000. See 28 U.S.C. § 1332(d)(6). Goldsmith filed a First Amended Class Action Complaint alleging six claims for relief under Missouri law: (1) Breach of Contract (Count I); (2) Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II); (3) Unjust Enrichment (Count III); (4) Money Had and Received (Count IV); (5) Violation of the Missouri Merchandising Practices Act ("MMPA") by Unfair Practices (Count V); and (6) Violation of the MMPA by Means of Deception (Count VI).

The district court[2] granted summary judgment dismissing all claims. Goldsmith appeals. We review the grant of summary judgment *de novo*, viewing the facts in the light most favorable to the non-moving party. See, e.g., Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC, 784 F.3d 1183, 1193 (8th Cir. 2015). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quotation omitted). Applying this standard of review, we affirm.

## I. Background

Goldsmith was a home-delivery subscriber to the *Post-Dispatch* from September 2001 until he switched to a digital access account in August 2020. During the time in question, the *Post-Dispatch* sent him pay-in-advance invoices on an eight-week billing cycle, the period he selected. Each invoice referenced the "Due Date,"

---

[2]The Honorable Matthew T. Schlep, United States District Judge for the Eastern District of Missouri.

"Amount Due," and the eight-week Term. The Term dates in some invoices included dates that had been included in the previous invoice Term. These overlapping dates are the basis of Goldsmith's allegation that the *Post-Dispatch* double-bills subscribers. When Goldsmith called to complain about overlaps, customer service agents would apologize and issue credits. In May 2019, Goldsmith filed this class action seeking damages for the allegedly unlawful and unethical billing practice.

After removal, both Defendants and Goldsmith moved for summary judgment in October 2019, prior to class certification. District Judge Henry Autrey summarized the competing legal theories in denying both motions, without prejudice, pending further discovery. Defendants contend all claims fail because Goldsmith cannot show loss or damage -- he received newspapers valued at $2,373.22 during the relevant five-year period at his applicable daily rates, and he paid only $2,369.42 for those newspapers. Goldsmith, on the other hand, argues "that each account statement represents a separate unilateral contract between Plaintiff and Defendants." By sending a subsequent statement which included a date of service already billed and paid, "Defendants breached the terms of the agreement made under the first statement and committed the other wrongs alleged."

Following additional discovery, Defendants filed a Renewed Motion for Summary Judgment. The accompanying Statement of Material Facts in Support explained the *Post-Dispatch*'s billing system, a system called DISCUS: DISCUS generates subscriber invoices for newspapers it anticipates being delivered. When a subscriber pays an invoice, the payment is posted to a running account dedicated to that subscriber. Each Sunday, DISCUS deducts from the subscriber's account an amount equal to the daily rate for each newspaper delivered during the preceding week. It never deducts the applicable rate twice for a single newspaper. If the subscriber inadvertently pays a bill twice, the *Post-Dispatch* continues delivering newspapers beyond the Term of the last bill and delays the start date of the following Term. If the subscriber pays an invoice after its stated due date, as Goldsmith did at

-3-

least six times, the *Post-Dispatch* continued delivering newspapers, as he expected. When a subscriber requests a "vacation hold" after a bill is paid, the *Post-Dispatch* does not deliver newspapers, delays commencement of the next Term (referred to as a "gap") and applies the unused portion of the paid bill to cover newspapers upon the subscriber's return. DISCUS generates bills with Term dates that, for various reasons, either overlap with the prior Term's dates or create a gap. In the past five years, Goldsmith has received invoices that have gaps and invoices that have overlaps. Goldsmith's Response to these Statements of Material Facts was, "Not controverted and not material." The statements are not material, he explained, because "Plaintiff's claim relates to overlapping invoices he received from the *Post-Dispatch* and paid for, not to how the *Post-Dispatch* internally accounted for his payments." His response to the Statements that he received newspapers valued at $2,373.22 and paid only $2,369.42 was "Controverted and not material."

In granting Defendants summary judgment, the district court noted that, "[p]ost-discovery, Plaintiff obtained records showing how overlaps work and how funds are credited and debited to his account. . . . Plaintiff can no longer conflate overlaps as a factual basis to assert that Defendants were in fact 'double-billing.'" Despite Goldsmith's allegation that the *Post-Dispatch* double-bills, "it is undisputed by Plaintiff that DISCUS does not deduct the applicable rate twice for a single newspaper." Therefore, the court concluded, "there is no genuine issue for trial based on Plaintiff's failure to prove a necessary element of his [breach of contract] claim -- damages." Goldsmith v. Lee Enters., Inc., No. 4:19-CV-1772-MTS, 2021 WL 5758434, at *1 n.1 (E.D. Mo. Dec. 3, 2021). Likewise, the fact that "Plaintiff has no damages because he never paid twice for the same newspaper even though it may have appeared that he did" defeats the third and fourth elements of his MMPA claim -- "that the *Post-Dispatch* acted deceptively, and that Plaintiff suffered an ascertainable loss as a result of any deception." Id. at *5. Nor did sending Goldsmith bills that included overlap days breach the implied covenant of good faith and fair dealing because "the undisputed facts show the *Post-Dispatch* provided Plaintiff with

-4-

the amount of newspaper content that he expected." Id. And because the retaining and use of overlapping payments to cover future newspapers was not unjust, Goldsmith's claims for unjust enrichment and money had and received "similarly fail." Id. at *6.

## II. Discussion

On appeal, Goldsmith argues the district court erred in granting summary judgment dismissing his breach of contract and MMPA claims because there are genuine issues of material fact "whether overlaps cost subscribers money" and whether Defendants' billing practices violate the MMPA because "overlaps are incorrect and wrong." He asks that we remand for further proceedings but does not separately address his implied covenant, unjust enrichment, and money had and received claims. We therefore affirm the grant of summary judgment as to those Counts without further discussion.[3]

**Breach of Contract Claim.** The elements of a breach of contract action are (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff. See, e.g., Keveney v. Missouri Military Academy, 304 S.W.3d 98, 104 (Mo. 2010). The district court granted summary judgment based on a finding that Goldsmith had not suffered any damages --

---

[3]In response to an alternative ground urged by Defendants that we need not consider, Goldsmith argues in his Reply Brief that "there was at least a genuine issue of fact regarding whether, as Plaintiff alleges, each invoice created a separate contract when paid." This issue was not timely raised on appeal. Though raised in the district court, it did not affect the court's summary judgment analysis. Under Missouri law, "[a] course of dealing between parties and any usage of trade . . . give particular meaning to and supplement or qualify terms of the agreement." Mo. Rev. Stat. § 400.1-303(d) (2017).

undisputed facts establish that Goldsmith cannot show loss or damage because he received every newspaper for which he paid and never paid twice for any of them. Goldsmith argues the court erred by relying on uncontroverted evidence of how the *Post-Dispatch* "handled subscribers' payments internally," while ignoring evidence Goldsmith presented that "gives rise to an inference that overlaps cost subscribers money." He relies on three types of circumstantial evidence.

First, he argues that the day-to-day responses to overlap problems by *Post-Dispatch* employees demonstrates that overlaps cost subscribers money. In 2019, for example, Astrid Garcia, Lee Enterprises's in-house attorney, sent an email to the Missouri Attorney General after the Attorney General's Office forwarded a subscriber complaint about receiving a *Post-Dispatch* bill with an overlapping date. Ms. Garcia wrote, "The method we use to synchronize dates did not work causing [the subscriber] to receive another invoice with the wrong date. His account has been corrected and new invoice with the corrected dates has been sent to him. These changes make [the subscriber] whole." By using the phrase "make whole," Goldsmith argues, the *Post-Dispatch* admitted that overlaps cost subscribers money. Similarly, when Goldsmith called the *Post-Dispatch* in 2018 to complain about an overlap, a customer service representative, consistent with the customer service training manual, apologized for the error, said it occurred because they "messed up on the start date," and credited his account with $18.

Recognition by the *Post-Dispatch* that its billing system lacked transparency and that unexplained overlaps generated subscriber complaints that needed to be satisfied does not create a genuine fact dispute about whether "overlaps cost subscribers money." Goldsmith came forward with no concrete evidence that any subscriber, including those who complained, ever paid twice for the same newspaper. Evidence the *Post-Dispatch* attempted to fix overlap issues and apologized for the error when customers complained does not negate this undisputed fact. Failing to fix the problem may have been bad customer relations, but it does not establish the

damage element of a breach of contract claim. Goldsmith based his claim on customer perception. The district court based its loss and damage decision on undisputed facts.

Second, Goldsmith argues that deposition testimony of three of Defendants' witnesses create a genuine issue of disputed fact about whether overlaps cost subscribers money. Like the district court, we disagree. Each witness repeatedly stated that DISCUS has never double-charged a customer. Don Hesse, the *Post-Dispatch*'s Vice President of Human Resources, Labor, and Operations, and Patricia Helfrich, a customer service manager, confirmed that subscribers have sometimes paid consecutive bills with overlapping dates. But Hesse testified, consistent with his Declaration in support of Defendants' motion for summary judgment, that "[t]he *Post-Dispatch* doesn't charge any account twice for the same day." And Helfrich, asked about the subscriber who complained to the Missouri Attorney General, stated "I don't agree with his terminology that he's getting charged twice for the same product because he is not." Consistent with his theory of the case, Goldsmith takes isolated answers out of context and equates subscribers paying overlapping bills with subscribers being charged twice for the same newspaper. This conflating does not create a genuine issue of material fact whether a DISCUS system that generated the appearance of some billing overlaps caused actual loss or damage to subscribers.

The most interesting example of these repeated efforts to equate subscriber perception with economic injury is a portion of the videotaped deposition testimony of Courtney Wright, a self-employed software architect whose company was hired by Defendants to support the DISCUS system and to provide data conversion services needed to migrate data from the DISCUS format to the format required by the NEWSCYCLE Solutions newspaper circulation software. Many of Wright's seventeen newspaper clients previously used DISCUS. In the initial cross examination, Wright explained his extensive efforts -- never entirely successful -- to eliminate overlaps that were causing subscriber complaints because "bills can appear

to be incorrect when in fact they're not technically mathematically incorrect." On page 196 of the 201-page deposition transcript, counsel for Defendants asked Wright:

Q  Do you know what double billing is?

A  Yes.

Q  What is double billing?

A  Double billing is when if I were to get a bill from the power company and if I pay it, and they turn around and bill me again for that same amount of power I would consider myself to be double billed for that.

Q  Are you aware of any situation in your years dealing with DISCUS where DISCUS has double billed a subscriber for newspapers that he or she received?

MR. CORNFELD:  Object to the leading form of the question.  *Object to lack of capacity, and object that this calls for an opinion*, go ahead.

THE WITNESS:  The design of DISCUS is such that the subscriber's money is not in terms of billing, utilized in the same way that it is for the power company.  When the power company sends me a bill that's for service already rendered and I pay that bill.

If they bill me again for service already rendered, then that would be paying twice.  If a customer gets [two bills in DISCUS that include an overlap and] if they paid both of those bills, even though it appears that they've paid twice. . . . Both of those bills will have a cumulative effect on the calculation of the expiration date, and therefore the second payments extends their expiration date out an additional term.  *So it's technically not possible for double billing to have a double charging effect on a subscriber.*

-8-

At the end of counsel for Defendants' questioning, counsel for Goldsmith followed up on this exchange:

BY MR. CORNFELD:

Q  Sir, you said that if the power company would send you the same bill a second time for the same amount of power you would consider that to be double billing correct?

A Yes.

Q  And what the newspaper does when it has an overlap is it sends a bill to the customer for the same newspaper that the customer has already paid for in response to a previous bill correct?

MR. MARTINEAU:  Object to the form.

THE WITNESS:  The overlap makes it appear that way yes.

BY MR. CORNFELD:

Q *It doesn't just make it appear that way, it is that way.*  The customer receives a bill for a certain period called a term. And the customer pays that bill.  And then the customer may get a second bill, and *on that second bill is a term with dates and if those dates include dates from the previous bill and the customer pays that second bill, the customer is paying for newspapers that the customer paid for in response to the first bill correct?*

A Yes.

(Emphasis added.)

In its Memorandum and Order, the district court quoted Wright's above-highlighted "it's not technically possible" statement, along with testimony by other

*Post-Dispatch* witnesses who distinguished between subscriber perception and economic harm, as establishing that the alleged double billing by the DISCUS billing system was not evidence that subscribers were damaged by paying twice for the same newspaper. On appeal, Goldsmith argues that Wright's affirmative answer to counsel's above-highlighted question is evidence that creates a genuine issue of material fact whether overlaps cost subscribers money and therefore summary judgment dismissing his contract and MMPA claims must be reversed. We disagree.

In the first place, Goldsmith's counsel objected that outside contractor Wright lacked the capacity to give an opinion that DISCUS software does not have a double charging effect on a subscriber, yet he now relies on Wright's inconsistent response to another question asking for the same opinion. Goldsmith cannot have it both ways. Second, the question to which Wright answered "yes" was improper in form -- it asked whether Wright agreed with a long convoluted statement that was inconsistent with Wright's prior testimony. Defendants' attorney objected to the form of the immediately preceding question. Wright probably should have been instructed not to answer this question unless it was reformulated. In any event, its usefulness at trial for any purpose other than impeachment is doubtful at best. Finally, even taking Wright's alleged admission at face value, it does not create a genuine dispute about a material fact on the issues of loss and damages. In 200 pages of deposition testimony, Wright consistently described his extended efforts to eliminate overlaps and gaps from DISCUS billing because they generated understandable subscriber complaints, while explaining at length why overlaps occurred, how they were "corrected," and why they did not result in subscribers being charged twice for the same newspaper, or paying for newspapers they did not receive. Customer perception can make people mad enough to sue, but it takes proof of ascertainable loss or damage to recover for breach of contract or an MMPA violation under Missouri law.

Third, Goldsmith argues there are disputes and inconsistencies in the way Defendants determined, from an analysis of Goldsmith's individual account, that he

did not pay for more newspapers than he received. The calculation errors Goldsmith alleges range from inclusion of an undelivered paper worth $0.63 to the exclusion of $78.24 in credits. "The jury should decide, Goldsmith argues, whether he in fact paid more than the sum of the *Post-Dispatch*'s charges." The problem with this contention is that it is immaterial to the breach of contract and MMPA class action damage claims Goldsmith asserted. Whether credits and charges unique to his individual account resulted in him paying a few dollars more or less than the value of the papers he received during the five-year damage period is not evidence that *Post-Dispatch* subscribers paid twice for newspapers delivered on overlap days under the DISCUS billing system. It might be evidence that Defendants made minor billing errors in Goldsmith's individual subscriber account. But that claim was not pleaded, no doubt because it could not be pursued on a class-wide basis. The district court did not err in granting Defendants summary judgment dismissing the claims Goldsmith asserted despite his belated raising of this unpleaded contract claim.

**MMPA Claims.** To prove an MMPA claim under Mo. Rev. Stat. § 407.025.01, Goldsmith must show that he "(1) purchased merchandise . . . from [the *Post-Dispatch*]; (2) for personal, family or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the [MMPA]." Murphy v. Stonewall Kitchen, LLC, 503 S.W.3d 308, 311 (Mo. App. 2016). The ascertainable loss element incorporates Missouri's "benefit of the bargain" common law fraud remedy. See Vitello v. Natrol, LLC, 50 F.4th 689, 693 (8th Cir. 2022). The benefit of the bargain is "the difference between the value of the product as represented and the actual value of the product as received." Thompson v. Allergan USA, Inc., 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014).

Counts V and VI of the First Amended Class Action Complaint alleged that the *Post-Dispatch*, by double-billing days included in two separate invoices, violated the MMPA by breaching its "duty not to engage in an unethical or unfair practice in connection with the sale of any merchandise." The district court granted summary

-11-

judgment dismissing this claim. Goldsmith "has no damages," the court explained, "because he never paid twice for the same newspaper even though it may have appeared that he did." Goldsmith, 2021 WL 5758434, at *5. The court further observed "the record shows [that] overlaps are not 'incorrect,' 'wrong,' or bad policy. . . . these facts defeat the third and fourth elements of this claim: that the *Post-Dispatch* acted deceptively, and that Plaintiff suffered an ascertainable loss as a result of any deception." Id.

On appeal, Goldsmith argues there is a genuine issue of material fact as to whether overlaps are incorrect or wrong, and therefore an MMPA unfair practice. He asserts that *Post-Dispatch* employees acknowledged that overlaps were wrong and were errors needing correction in responding to subscriber complaints and to the Attorney General's inquiry, and they spent years attempting to fix this part of the DISCUS system.

All that may be true, or at least debatable, but it does not address the district court's conclusion, based on Defendants' uncontroverted Statement of Material Facts, that Goldsmith cannot show he suffered "an ascertainable loss . . . as a result of" the alleged unlawful billing practices. § 407.025.01. After being afforded extensive discovery, Goldsmith failed to controvert Defendants' evidence showing that DISCUS properly deducts (amortizes) from a subscriber's payment-in-advance the applicable rate charged as each newspaper is delivered. As the district court noted, "the *Post-Dispatch's* billing practice could have been more transparent . . . but as a matter of law this is not a violation of the MMPA." Goldsmith, 2021 WL 5758434, at *5. Because Goldsmith cannot establish the ascertainable loss element of an

MMPA claim, we need not address his additional argument that the *Post-Dispatch*'s billing practices are unfair or unethical.

## III. Conclusion

The judgment of the district court is affirmed.

_____